FILED
2024 Jul-18 AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| AMANDA JANE COCHRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:23-cv-631-GMB |
| ) | |
| MARTIN O'MALLEY, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

On August 21, 2020, Plaintiff Amanda Jane Cochran filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of January 22, 2020.  Cochran's application was denied at the initial administrative level and upon reconsideration.  She then requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held a telephone hearing on October 13, 2022, and denied Cochran's claims on October 31, 2022.  Cochran requested a review of the ALJ's decision by the Appeals Council, which declined review on March 31, 2023.  As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of March 31, 2023.

Cochran's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil

Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Cochran bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform her former occupation?
> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. RELEVANT FACTUAL BACKGROUND

Cochran was 60 years old on the alleged disability onset date. R. 198. Her primary complaints are constant pain "from the top of [her] head down to [her] feet," numbness in her legs and feet, degenerative disc disease in her lower back, and an inability to lift or hold anything with her right arm. R. 40. In her disability report, Cochran alleged the following medical conditions: neck pain, joint pain/arthritis, depression, and anxiety. R. 227. She has a high school education, two years of college, and police officer training. R. 228. Her past relevant employment includes work as a receptionist, security guard captain, and school resource officer. R. 38–39, 228–29.

At the hearing, Cochran testified about her limitations and daily activities. She said that she cannot stand or walk for long periods of time before she has to stop

and take a break because her right ankle "constantly stays swollen." R. 43. She briefly walks around the house and estimated she can walk for only a couple of minutes at a time. R. 43–44. After she sits for a "little bit," however, Cochran has to lay down for 15 or 20 minutes because her "head feels like a bowling ball" and laying down helps to get the pressure off her shoulders and her arm. R. 45. She also has nightmares and post-traumatic stress disorder which prevent her from sleeping well at night. R. 45–46.

Cochran does not live by herself. R. 47. She is able to take care of her personal hygiene, including bathing in the bathtub. R. 47. She cannot hold a blow dryer because of the weakness in her arm. R. 47. She does not shop and only goes outdoors for visits to the doctor or to see her daughter. R. 47. She does not drive. R. 47.

Cochran submitted medical evidence from various sources. As is relevant here, Wilbur Lewis Blackman, a physical therapist,[2] completed a Medical Source Statement on October 14, 2020, after performing a functional activities assessment. R. 386–88. Blackman began by listing Cochran's impairments and subjective symptoms: "61-year-old female with cervical stenosis and radiculopathy to right upper extremity with right upper extremity worse than left upper extremity. Primary symptoms of pain and weakening with activity which causes cramping. Patient also

---

[2] As both Cochran and the Commissioner note, the ALJ incorrectly identified Blackman as "Williams Lewis Blackman" and described him as a medical doctor. R. 24–26. This error does not affect the court's analysis.

demonstrates issues into right lower extremity as well as numbness/tingling." R. 386 (cleaned up).  The form then prompted Blackman for his opinion on how many days during a 40-hour work week the patient could be expected to miss work due to these impairments. R. 386.  He checked the box for "5+ days." R. 386.  At this point, the form prompted Blackman to assess Cochran's ability to perform different activities by checking one of four options—never, infrequently, occasionally, or frequently.[3] R. 386.  Blackman responded that Cochran could frequently sit; occasionally stand, walk, and climb; and infrequently stoop. R. 386.  And he noted that she could frequently lift 1 to 5 pounds, occasionally lift 6 to 10 pounds, infrequently lift 11 to 20 pounds, and never lift more than 20 pounds. R. 386.  The next question asked, "Patient can do the following in a work environment on a full time basis?"  Blackman checked that Cochran could occasionally use her hands for fine and gross manipulation and infrequently raise either arm over her shoulder. R. 386.

The next set of questions on the form again asked Blackman to check boxes with pre-printed answers and to fill in some blanks. R. 387.  He checked "yes" when asked if the patient's condition caused pain, while checking the box for "severe" when rating her pain level. R. 387.  He checked "no" when asked if she needed to

---

[3] The form defined these terms as follows: "Never = can never perform the activity"; "infrequently = can perform very little if at all on some days"; "occasionally = can perform the activity up to 1/3 of an 8-hour workday"; and "frequently = can perform the activity 1/3 up to 2/3 of an 8-hour workday." R. 386.

elevate her legs, but checked "yes" that Cochran had "a reasonable medical need to lie down due to pain, fatigue, or other impairment" and estimated she would need to do so two to four times per day for 15 to 30 minutes each. R. 387.  He checked "40%" when asked what percentage of the time Cochran would be off task during an average workday. R. 387.  Finally, he checked the boxes for "yes" when asked whether she would need to take unscheduled work breaks and whether all of Cochran's limitations would last for 12 consecutive weeks or more. R. 388.

The ALJ issued her decision on October 31, 2022. R. 28.  Under step one of the five-step evaluation process, she found that Cochran had not engaged in substantial gainful activity since January 22, 2020, the alleged onset date. R. 20.  The ALJ concluded that Cochran suffers from the severe impairments of degenerative disc disease of the lumbar spine, fibromyalgia, adjustment disorder with depression and anxiety, and post-traumatic stress disorder.[4] R. 20.  The ALJ noted that these medically determinable impairments cause significant limitations in her ability to perform basic work activities. R. 20.  And the ALJ concluded at step three of the analysis that none of Cochran's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 21–23.

Before proceeding to the fourth step, the ALJ determined that Cochran had

---

[4] The ALJ found Cochran's other impairments of degenerative joint disease of the cervical spine, carpal tunnel syndrome with nerve damage, memory difficulties, and swelling of the right leg to be non-severe. R. 20–21.  Cochran does not challenge this finding. *See* Doc. 10.

the residual functional capacity ("RFC") to perform a limited range of medium work as defined in 20 C.F.R. § 404.1567(c). R. 23. More specifically, the ALJ found that Cochran had the following limitations with respect to medium work:

> [T]he claimant can frequently climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can never balance as defined by the Dictionary of Occupational Titles. The claimant can frequently stoop, kneel, crouch, and crawl. The claimant cannot work around excessive vibration, unprotected heights, or hazardous machinery. The claimant can understand, remember, carry out, and make simple routine and repetitive instructions, tasks, and decisions consistent with unskilled work. The claimant can maintain concentration, persistence, or pace for two-hour periods for such tasks. The claimant can [have] occasional work-related interaction with the general public and coworkers. The claimant can have occasional workplace changes that are gradually introduced.

R. 23. At the fourth step, the ALJ considered Cochran's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that Cochran can perform, including work as a hand packager, laundry worker, and order picker. R. 26–28. Therefore, the ALJ concluded that Cochran was not under a disability as defined by the Social Security Act from January 22, 2020, through the date of decision. R. 28. Based on these findings, the ALJ denied Cochran's application. R. 28.

## IV. DISCUSSION

Cochran makes one argument in favor of remand: that the ALJ did not properly evaluate the medical opinion of physical therapist Wilbur Lewis Blackman, M.P.T. Doc. 10 at 7–11. The court disagrees.

As Cochran recognizes, on January 18, 2017, the Social Security Administration published final rules titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844). Because these final rules were effective as of March 27, 2017, and Cochran applied for benefits after that date, the new rules apply to her claim. Under 20 C.F.R. § 404.1520c(a), the ALJ need not give any specific evidentiary weight to medical opinions, including those from the claimant's own medical sources. In *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892, 897–98 (11th Cir. 2022), the Eleventh Circuit affirmed that these new regulations eliminate the treating physician rule that previously governed the ALJ's consideration of evidence from medical sources.

Under the new regulations, the ALJ may consider the following factors in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). Of these, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain how she considered supportability and consistency in her decision, she need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). And the ALJ is not required to articulate how she considers each medical opinion or prior administrative medical

finding; the application of each factor to all the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

Cochran points to the form Blackman completed on October 14, 2020, and argues that the ALJ did not properly consider Blackmon's opinions. Doc. 10 at 9–11. The court disagrees. The ALJ rejected Blackman's opinions memorialized in the form and found them not to be persuasive. R. 25–26. Specifically, she noted that "Blackman did not provide information on his relationship with [Cochran] or whether he has observed [Cochran] personally or has a treating relationship." R. 25. Further, she reasoned that the "opinion is not supported by the examination findings or objective evidence; for example, objective evidence showed only mild degenerative changes of the cervical spine with full range of motion or the extremities without neurological deficits such as atrophy or decreased sensation." R. 25. In other words, the ALJ found "no support offered for his findings, and his findings are inconsistent with the treating records that show mild limitations with imaging and largely normal examination findings." R. 26. Substantial evidence supports the ALJ's evaluation of Blackman's opinions.

First, the medical records do not support the extreme limitations Blackman recorded on the form. Instead, those records show mild limitations reflected in imaging and largely normal findings on examination. For example, Cochran's cervical spine x-rays reveal mild degenerative joint disease and her lumbar spine x-

rays show mild anterior osteophyte formation at L2-3 and L3-4 with no acute abnormality. R. 364, 494, 506–07, 511. Examination notes from Dr. Mohammad Fawad Aryanpure, a physical consultative examiner, reflect that Cochran had a normal gait, full strength throughout her arms and legs, and slightly decreased grip strength of the right hand. R. 494–95. At a follow-up examination, Cochran had full strength in her arms and legs, full range of motion throughout, normal gait, and full grip strength in both hands. R. 506–07, 512, 514–15. Likewise, treatment notes consistently describe her neck pain and fibromyalgia as stable (R. 500, 520, 523) and detail normal neck appearance and range of motion, normal range of motion of the arms and legs, and full motor strength and tone. R. 494–95, 511–12. In other words, the medical records do not support Blackman's opinions of extreme limitations. *See Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (concluding that the ALJ properly considered a claimant's conservative treatment with medication as evidence undermining his testimony); *Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

Second, Blackman did not provide any substantive explanation for his

opinions. Notably, other than the form in question, there are no records in evidence relating to Blackman's examination of Cochran or showing that he ever treated her as a physical therapist. Instead, he checked boxes, circled responses, or filled in blanks without explaining his answers. R. 386–88. And the only written portion of the form simply restates her condition and subjective complaints. R. 386. "Opinions of this type are conclusory and have limited probative value. Indeed, several courts have criticized "form reports" like these, where a physician merely checks off a list of symptoms without explaining the evidence supporting the decisions. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."). The lack of explanations and treatment records, as well as the lack of support in the medical record from other medical

13

professionals, undermines Blackman's opinion.

Finally, the court rejects Cochran's invitation to reweigh the evidence. It is the court's job to review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *see Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court").

For these reasons, the court concludes that the ALJ applied the proper standards in evaluating Cochran's medical evidence and did not err in her consideration of Blackman's opinion. The ALJ adequately articulated the reasons for finding the opinion unpersuasive and inconsistent with the records. The court finds that substantial evidence supported this decision.

## V. CONCLUSION

The court concludes that the Commissioner's decision is supported by

substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on July 18, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE